Okay, our first case this afternoon is People v. Lagrone, and that is case number 4150845. For the appellant, we have Amelia Barakas. Close, anyway, okay? Okay, thank you. And is it Gail Pisetsky? Gail Gail, okay, thank you. Oh, and by the way, as you notice, there's only two of us up here today. Justice Kinect, I should say President Justice Kinect, cannot be here. However, he has read the briefs and all the materials. You'll be listening to the audio recordings of this proceeding, and obviously you will ultimately participate in the decision this Court ultimately makes. Having said that, you may proceed. Over here, the appellant. May it please the Court? Good afternoon. My name is Amelia Barakas, and I'm appearing today on behalf of the people of the State of Illinois on this appeal for the trial court order entered on October 6, 2015. This is an order that gives rise to three separate issues for the Court to consider, two of which are jurisdictional, and one that is based on the constitutional rights of the defendant under the Confrontation Clause of the United States Constitution. The first issue is whether the trial court order was in order to suppress, as is required to give this Court jurisdiction under Supreme Court Rule 604A1. The second issue is whether or not the trial court order can be appealed pursuant to 604A1 when it is entered during trial, whether or not a mid-trial interlocutory appeal is allowable under Supreme Court Rule and as an extension under the Illinois State Constitution. The final issue gets to the heart of the matter, and that is the question of whether or not the testimony offered by the State was potentially in violation of the defendant's rights under the Confrontation Clause. The first issue is the most straightforward of the three faced by the Court, and it is the least complex of the analyses, and that is the question of whether or not this was a motion to suppress under Illinois law. Historically, this has been a more complicated question by the Court. At one point in time, the Court engaged in an analysis of whether or not it was a motion to suppress evidence, or whether the evidence was merely excluded. That analysis has been abandoned for quite some time now, actually, and People v. Young, the Illinois Supreme Court, said that line of precedent was overruled. It had proved to be just difficult to enforce and unwieldy, and the Court felt it was more fair and it was more straightforward to instead focus on the effect of the order. And that is regardless of whether or not the order is labeled a motion to suppress, whether or not it is brought as an evidentiary exclusion pursuant to the rules of evidence, or whether it is categorized as a motion to eliminate, any of those types of orders, or in fact any order entered by the trial court, could in fact be a motion to suppress. The question is, what was the effect of that order? And the Illinois Supreme Court has been very clear that when looking at whether or not it was a motion to suppress, the question is, did it prevent the jury from hearing evidence? If so, was it a motion to suppress? And the analysis is no more complicated than that and goes no further. In this particular case, the State's position is that this was in fact a motion to suppress because it kept the jury from hearing any evidence about the identity of the substances seized by the police officers from the defendant's home. And as a result, that evidence, at the time the order was entered, was excluded, and under 604A1, it was a motion to suppress the evidence, giving this court the ability and the jurisdiction to continue its analysis further. It is worth noting that even under the prior analysis that was more detailed and more complicated, whether it was a motion to exclude or a motion to suppress, this particular order still would have been considered a motion to suppress because it was based on constitutional grounds. One of the original analyses that the court looked at, and which I believe the defendant referred to, was this idea that a motion to exclude evidence could either be based on the rules of evidence or it could be based on constitutional basis. This was not an exclusion of evidence based on a rule of evidence, under any of the Illinois rules of evidence. It was actually a motion to exclude on the basis that it violated the defendant. Well, the court doesn't say that the jury can't hear this type of evidence. It just says that the way the state is attempting to present it to the jury is not permissible. Isn't that a distinction? It is, and that is a distinction the court has made. However, the question is, was there an alternative means for the court to enter into that evidence? And in this case, there was not. Theoretically, at one point in time, there may have been. There was another witness who at one point in time could have offered this evidence. And theoretically, possibly, the court could have created a new avenue to enter that evidence. Well, couldn't the state have asked for a continuance? The state could have done so. But as of yet, no court in the state of Illinois has said that the defendant can avoid the finding that an order entered by the court was a motion to suppress evidence on the basis that they could have simply asked for a continuance and tried to go out and gather the evidence in another way. If the court were to go in that direction in this case, it would be breaking new ground. The court has been very clear that it is just a matter of looking at the time the order was entered and whether or not that order was an order to suppress evidence, raising the question potentially whether or not the court would have granted, even if it had been requested, whether the court would have granted a motion for continuance based on the fact that this particular order was entered and the motion made during the trial. Does it matter that the state's witness had been on medical leave and the state was well aware of that and in fact had sought a continuance before and yet did not get a new forensic scientist to do the chemical testing? Does that make any difference? No, Your Honor. I do not believe it does. Again, the court's analysis has only been focused on what was the effect of the order when it was entered. The court has not been engaging in looking at all of the other factors to determine whether those are appropriate to analyze. And a good comparison for this case is People v. Truitt, a case where the court found it was not a motion to suppress evidence on the basis that at the time the order was entered, the state actually had an alternative means of entering that evidence. In Truitt, the state had attempted under a prior statute, which has since been found to be unconstitutional, the state attempted to enter into evidence through affidavit. The trial court found that that statute was unconstitutional and that it was required to bring live testimony, which the state at no point contended it did not have. In fact, it did have. It was simply trying to use this procedural statute to offer it in a different manner. The Illinois Supreme Court said we do not have jurisdiction under Rule 604A1 because clearly at the time this order was entered, its only effect was in how the information was conveyed to the jury. It did not prevent any information from being conveyed to the jury. And that is not the case here, where the state's only possible alternative was no longer available to it. Specifically, what was it that was excluded by the trial court? In this particular case or in Truitt? In this case. In this particular case, the trial court excluded all of the expert testimony from Kristen Stiefvater, who was the state crime lab analyst, who had done the peer review and subsequently also a testimonial review of the testing that was performed on the materials seized from the defendant. So it wasn't just the test results that were excluded, but any additional opinion testimony that the witness would have been able to offer that was excluded? Yes, Your Honor. It was all testimony regarding any testing that had been completed. Was an offer of proof made by the state? The state did not make an offer of proof. The record reflects that Ms. Stiefvater did take the stand. The foundation was laid for her knowledge as an expert, as a 16-year veteran in the state crime lab who had analyzed tens of thousands of samples like this. And at that point, after she was tenured as an expert, defense counsel objected and the trial court engaged in the question of whether or not the confrontation clause could be violated by that particular testimony. So, unfortunately, we're to some extent limited in the terms of knowing the exact contents of her potential testimony, although we certainly can make some inferences based on the status of the case and our knowledge of her experience with this particular testing in the state crime lab. But if a party is claiming the improper exclusion of evidence by the trial court, isn't it incumbent on the party to make an offer of proof so that the appellate court can review what it was that was potentially improperly excluded? Isn't that what, like, people de-PILO? There are any number of cases in that regard. Yes, Your Honor. And in some instances, that would be a requirement for the appellant to really bring the issue before the court. But when looking at the trial court order in this particular case, what the trial court was saying is this testimony can never be allowable. This testimony will always violate the confrontation clause. And the state's position is that is an inaccurate conclusion of the trial court. It may be, and I'm not saying that it is, but suppose it is an inaccurate conclusion. But don't we have to know what it is that is potentially being offered in the way of evidence to make that determination here? And whether or not the state was truly precluded from presenting its case? Well, Your Honor, when we're looking at the requirements for finding of a motion to suppress, it's a two-step process. First, it must be a motion to suppress evidence. Second, it must have had a substantial impact on the state's ability to bring its case. With regard to that second inquiry, the Illinois Supreme Court has been very clear that for the most part it will not engage in hypotheticals. It will take, once that affidavit is filed, it will take the state's word for it, unless a challenge is brought potentially by the defendant saying that no, you were not impeded in your ability to bring this case. So in that regard, with regard to that prong of the 604A1 analysis, no additional evidence or facts are required by the state once that affidavit has been filed, assuming that no challenge has been made and none have been. And that would be if it was a motion to suppress evidence as opposed to an evidentiary objection? Well, Your Honor, in Young, the court said there's really no distinction, that it is the effect of the order, not necessarily what it is called. But yes, that is correct. So long as it is a motion to suppress evidence, then yes, that is that two-prong inquiry, where the second prong is the filing of an affidavit stating that the state's case was substantially impeded by the exclusion of the evidence. Now the second issue before the court is a very interesting one, and this is this dichotomy that we are facing under 604A1, and whether or not the state may bring a mid-trial appeal of this issue. And consequently, whether or not the defendant could have made his objection at this point in time, or whether that objection had been waived by the fact that trial had begun. And in this particular case, the case law dates back to People v. Flatt from roughly 30 years ago, where the court analyzed 604A1 and found in the context of the Illinois Rules of Criminal Procedure, mid-trial appeals were not excluded when brought pursuant to Section 114-12. However, it has been less clear whether or not mid-trial appeals are allowed with regard to other types of orders entered during trial. And in this regard, the court has two options on how it might rule. If it chooses to follow the very narrow interpretation of Flatt that has been adopted by the Second District, then the defendant's motion was untimely. And this court has jurisdiction only to the limited extent that it can say, your objection was untimely and the trial court should not have considered it. And as such, would return it back to the trial court saying the order was not properly entered. That is under a very literal interpretation of Flatt, and one that the Second District and other district courts have stated that they believe was the holding of Flatt. A more permissive approach to Flatt, which also is very consistent with the court's analysis, which recognized that when the Illinois Supreme Court was given the power to determine when appeals may be brought pursuant to the Illinois Constitution, that statute and common law could no longer place any restrictions on that. So we need to turn to the plain language of Rule 604-A1. And the plain language of Rule 604-A1 clearly does not draw a distinction on the timing of the motion. Nowhere in the Supreme Court rule does it state that the court should consider the motions to suppress, that suppress evidence, differently if they are decided before trial or if they are decided during trial. The one consideration the court has that is of great concern is whether there would be any conflict with other considerations or other legal issues, primarily being the constitutional right to be protected against double jeopardy. But as the State has discussed in our brief, double jeopardy is not necessarily at play here because the defendant has not traditionally been allowed to benefit from the timing of his or her own motion. And when the defendant chooses to bring a motion during trial, they waive the right to object, that it is in any way unfair for the State to receive review of that decision by the trial court. What motion are you talking about? What motion are you speaking about? The motion to exclude evidence. So the objection, I apologize. You're calling the objection a motion then? I am, Your Honor. I apologize. All right. No, I just wanted to be clear. Yes, when the objection was made, it was made on the timing of the defendant. And particularly in this case, it is very clear that it was a choice made by the defendant, and the defendant could have brought this issue prior to trial, directly before trial beginning. The judge asked if there were any issues. The State attorney at that point said, we would like to give you a heads up that Ms. Irwin is still unavailable due to medical leave and will not be able to testify, but we will be offering the testimony of Ms. Stiefvater, who performed peer review and has analyzed that data in her place. Well, do you think defense counsel is obligated to respond to that representation by the State? It depends on this Court's ruling. If this Court finds that under flattened progeny, this type of objection needs to be made prior to trial, then yes, at that point. Did the trial court ask defense counsel to comment on the strategy that had just been outlined by the State's attorney, or the assistant State's attorney? It did not, Your Honor. Directly after the State commented on the evidence it would be bringing, the trial court asked, are there any other issues? Both counsel replied, no. The trial court did not specifically ask the defendant if they were going to be objecting, or if they would like to in any way move to exclude that testimony. And I'm not aware of any case law that says the trial court would be required to. But under Supreme Court Rule 604A1, it's very clear that the plain language simply states, and pertinent to the extent it's pertinent here, in criminal cases the State may appeal only from an order of judgment, the substantive effect of which results in suppressing evidence. And again, there's no mention in the plain language of the rule that appeals from those types of orders cannot be taken mid-trial. And there's some evidence that the Supreme Court and Flatt did not intend for the very strict interpretation that the Second District and others have taken. First of all, because at the time that Flatt was decided, not only did Section 114-12 exist, but so did Section 114-11, which provided different means for challenging evidence based on different constitutional objections. And so if the court were to strictly interpret Flatt, then it leaves in question what that means about very similar, if not identical, statutory language for another provision. Also, just a few years later, the Supreme Court found in a very different case that it did allow an interlocutory appeal of a mid-trial order. So this is an area where perhaps not as much clarity as would be preferred, but following the plain language of the statute or of the Supreme Court rule, it seems very clear that there's not much grounds for creating a distinction so long as this court finds that it was an order suppressing evidence. The third issue is the one that gets to the heart of this case, and that is whether the testimony that the state sought to offer against the defendant was in any way a violation of the Confrontation Clause. The concern there is that Ms. Stiefvater did not actually run the tests on the material seized by the defendant, and the question being, as a result, was the defendant in any way deprived of his ability to confront that witness and to attack the evidence against him? The precedent in this area is somewhat murky, unfortunately, because of the United States Supreme Court's plurality opinion. However, when it comes to the context of this case and the actual order entered by the trial court, which was the finding that this testimony could never be admissible in any part or portion, the very clear answer is that this testimony did not violate the Confrontation Clause as it was presented at trial, because there was ample ground for an expert to testify to materials that are not in evidence or might not be otherwise admissible and to use his or her expertise to interpret test results. That is very, very clear. I'd like to draw the Court's attention just briefly... You say that's very clear. What case makes that very clear? I would like to draw the Court's attention to the U.S. Supreme Court's opinion in Williams v. Illinois, because while the ideological difference between the two branches of the Court is very wide, the portion of the testimony they disagree with is very, very narrow. And I'm reading from Justice Kagan's dissent where she says, there was nothing wrong with Lombardos' testifying that two DNA profiles, the one shown in the cellmark report and the one derived from Williams' blood, matched each other. That was a straightforward application of Lombardos' experience. So even the dissent has no problem with the expert looking at test results and providing an interpretation of what those results mean. The concern the Court had was to the extent that the expert was simply repeating the opinions of others or was vouching for the work of others. And in that particular area, that created a great deal of concern by the Court that that was a violation of the Confrontation Clause. And Justice Kagan presents a very specific issue in the introduction to her dissenting opinion, where an analyst who was on the stand realized during testimony that she had made an error, that she had switched two labels and misidentified samples. And so that was really the focus of the concern there, not this idea that experts can interpret lab results they did not themselves perform. It would seem clear based on the dissent, everyone agrees they may. Was the expert made a mistake in weighing the substance or determining what the substance was? And a defendant doesn't have a right to cross-examine that expert if he's a surrogate witness. How could that not be a Crawford violation? That is a very fair concern, Your Honor. However, it is not one that is necessarily here to the extent it might be in other circumstances. And the reason I say that is because we are dealing with the potential witness had actually performed a peer review of the testing. She was involved in the quality control of the activities that were conducted in this particular case. We don't know to the extent, but she did personally review and had personal knowledge of the testing that was performed in a role of making sure that it was performed correctly, that no mistakes were made. So while it would be fair for the defendant to still be critical or to cross-examine her on the fact that there were some limitations, that she did not actually put the test into the machine, the concern that she had no knowledge is absent like in the other cases. Thank you. Thank you. You will have rebuttal. Mr. Pesetsky. Thank you, Your Honor. May I please the court?  Your Honors, this court does not have jurisdiction to hear the matter. And as we heard from counsel, I agree with her that the issue initially relies on Rule 604. And Rule 604, as we know, speaks of motions to suppress. And as your questions were pointing out before, Your Honors, this was an objection during trial, a testimony that could only have been made during trial. Mr. Legrone did not have to bring any of those issues pre-trial because the way the manner each party decides to try their case is the way that they tried to try the case. It does not mean that one side or the other have to tell the other side what to do and how to practice. Restrictions. Well, do you think the state may have been misled when defense counsel remained reticent after the state had revealed that it was going to use a surrogate testimony? And if they did, so what? It's not an issue for defense counsel. What I get from what you just said is, yeah, they may have been misled. It doesn't matter. No, no. I thought you said, if they did, so what? Well, I don't. So maybe my response was not accurately conveyed. The state had, from March 13, 2015, when they initially asked for a continuance, because Ms. Irwin was unavailable supposedly back then, all the way to October 6, 2015. During that time, they could have filed a motion with the court. They could have possibly called and discussed the issues with counsel and brought it before the judge. And obviously the state was prepared for some sort of an objection mid-trial, because if you read the transcripts, they were prepared for the argument with their own case law. And so they could have done a number of things pre-trial and possibly during the trial to resolve their issue. It was the state's issue of evidentiary issue. Would it have been the proper subject of a motion in limine by the state? It may have been a subject of a motion in limine by the state pre-trial. It could have been by requesting the judge to see how he would rule on it. But once the jury is in panel and we are in the midst of testimony, and by the way, the expert's testimony was not all stricken. The only thing that was not allowed was for her to use the information that was created by Ms. Irwin. The objection was specific, and the objection came at a very specific time when the state intended to introduce what Ms. Irwin's reports indicated and said. There was no independent review by the expert that the state called of this specific information. She simply parried it. She was going to parry it or in a way be a surrogate witness as to these results. And why would the state call her if not for that? If she disagreed with it, of course the state would never have called her to testify. But that's taken us to the next issue. Before you move on to the next issue, did the state ever say what the nature of the medical leave was and whether just because their witness was a medical leave, that precluded her from coming to the courthouse to testify? No, and I did not want to move to the next issue, and that is one of the things that I was going to tell the court. There are a few things that at the time of the objection, the state and counsel here argues that it is the exclusion, that your honors have to look at the effect of the order entered at the time it was entered. However, at the time that it was entered, the judge gave the state at least an overnight, from 4.30, it was about 4.15 in the afternoon, until the next day to come back with alternatives. The judge did not make a ruling per se on that day. He did not discharge the jury on that day, and in fact he asked the jury to come back the next day. The state never came back the next day and said, Your Honor, Ms. Irwine is unavailable because of... Ms. Irwine is unavailable. She's on medical leave. Bullcoming, actually, is right on point on an issue like that, because the expert in Bullcoming was unavailable because he was on unpaid leave. But the court in Bullcoming said that that does not create a situation that he is unavailable to testify. We know and we have seen plenty of police officers that retire from the force and they are unavailable as a police officer, but they come back to testify. We know that expert witnesses and other witnesses that are on medical leave because of, for example, pregnancy, come back and testify. So just because somebody is on medical leave does not make them unavailable, specifically, as counsel says, at the time of the order or the effect of the order. The effect itself did not have an effect of suppression whatsoever, and I think, Your Honors, both hit it on the head. The evidence was absolutely available for the state. The evidence was not suppressed. The drugs were available. The reports were available. The notes were available. And I believe, Your Honors, that if the state wanted to retest those drugs, their expert who works at the Illinois lab could have done it probably within that one day, because lab results, unlike DNA results and such, do not take a long time. They have the information. They have the capability to turn around and give you back a result, a lab result, the next day. The state did not attempt to ask for a one-day continuance, an additional half-a-day continuance. It was all alternatives that were available for the state to make sure that their evidence that was available, not suppressed, could be introduced. They did not explain to the judge why Ms. Irwin is not available. At the time, and as Your Honors pointed out, they did not ask the judge to give him an offer of proof. I think it would have been very simple, and I think the judge was inviting the state to give him information and to provide him with information regarding what they intend to do and how they intend to proceed, and that's the reason why he continued telling the state, I am going to send the jury home, and I'm going to let you come back in the morning and tell me how and what you want to do and how do you want to proceed. The state had at least three or four avenues to pursue at the time in order to make sure that their evidence is available for them to introduce, maybe not through that specific expert, but through different ways, or even if they wanted to use this specific evidence, she could have tested it that same day or the next day, and I'm sure the trial court would not have said no to a half a day to a day continuance with the jury and panel. Counsel, Mr. Legron, never objected, never demanded trial, never objected to, I don't believe and I don't remember 100%, but I don't think that there was an objection to the continuance on March 13th, but I don't want to be quoted on that. In any event, it was the state that moved the court to declare a mistrial. Correct. And the defendant objected and then the court granted the state's motion over that objection. Correct. Absolutely. And as in K-E-F, it is very similar and it's very similar to the situation where the state chose to introduce Irwin's information, notes and reports, which in turn made her an absolute necessary witness against Mr. Legron, and the state then chose to go through their expert to introduce those reports, despite having other avenues to make that available to them at trial. And therefore, because they asked for the mistrial, because they created the situation, because Mr. Legron objected to it, I believe that even if your honors believe it was a suppression issue, there is a double jeopardy issue in this case. However, I don't think it's a suppression issue, and I think counsel confuses maybe or misstates some of the obvious here. It could only be an issue for appeal under 604 if it is a suppression issue. So when counsel talks about her second issue, can the mistrial up here be brought, that issue can only be addressed if your honors rule first that the evidence were suppressed. If your honors rule that the evidence is that it was not a suppression issue, but an evidentiary exclusion issue, then this case is over there because the court has no jurisdiction. If the court determines, on the other hand, that it is a suppression issue, then we have to look into rule 604 and how to go and interpret that after, as counsel said, in flat and the cases that came after it, whether it's a wider review or a narrower review of a suppression issue. In either way, your honors, even if it's a suppression issue, the problem here is that double jeopardy has attached since the state made the determination of how to proceed and request that mistrial. So you're saying if we find we do not have jurisdiction, then the state, if it attempted to reinstate the charges, would be precluded from doing so because it would be a double jeopardy violation? Right. Yes. And so that is the first part, I believe, of the state's appeal that talks about jurisdiction of the court and then whether or not they can appeal mid-trial. These are the first two issues that the state spoke of, and unless your honors have other questions about that, the next issue was if your honors decide to take on this appeal and if you believe that there is jurisdiction to take a mid-trial appeal, then can the state introduce such evidence with this expert that they called, or a surrogate expert as I would refer to it. Now, the state in their brief stated that they believe it's a de novo review because it's based on the that it is your review is a review of whether the court properly sustained an objection to testimony that would have resulted in hearsay testimony that involves the confrontational clause. Thus, the evidentiary rulings are within the court's discretion because it was an evidentiary ruling. And reviewed for abuse of discretion by the judge. And I would submit that it's a review if we get to this point, it's an abuse of discretion. Because as we know, it is not the state's Sixth Amendment confrontational right that was possibly violated. It's the defendant's confrontational right that could be violated, but it wasn't because the judge sustained the objection and because the judge sustained the objection, it's an evidentiary issue and not a confrontational issue reviewed de novo. And that is the way I see the standard of review. And if it was an abuse of discretion, your honors, I think the judge's ruling should be sustained for a number of reasons. And counsel said that the results are murky because it's plurality opinions by the Supreme Court on a number of cases. So we have Melendez-Diaz, we have Williams, and we have Bull Compton. Williams, which the state relies on heavily, is a DNA issue. And the Supreme Court could not have been clearer. And I think by the time they ruled on Leach, they have all agreed that laboratory results for controlled substances is testimonial in nature and is different than the Williams court that was talking and deciding DNA issues. The court was clear that said that forensic reports run afoul to the confrontational clause because they are equivalent to affidavits made for the purpose of proving the guilt of a particular defendant at trial. And that is the focus of Bull Compton, Melendez-Diaz, and even Williams. The question is, did the reports made by the request of law enforcement or the state, in order to prove the guilt of a defendant that has already been accused, and I think that the judge in our situation have addressed that issue specifically and tailored the question specifically even to the state during the hearing on the objection. The court in Williams and in Bull Cummings said that you must look objectively for the primary purpose of the report if it's accusatory. And in our situation, unlike DNA or pathology reports, it is accusatory and it's very specific. Bull Cumming, if we look at Bull Cumming and compare it to our case here, Erwin report was shown, the report itself, as in Bull Cumming, was absolutely a certificate, almost as an affidavit, or Erwin certified that she received the evidence in a certain manner, that she tested it in a certain manner, and that she preserved it in a certain manner. These representations relating to a human action and not related to raw machine-produced data are the crux of the cross-examination. When counsel says that it was raw data that their expert was testifying to that is inaccurate and falls squarely against what Bull Cumming was saying relating to drug evidence or lab evidence, the analyst who writes reports, the state introduces, here it was through the expert, must be available even if they possess the scientists, that is, as in Bull Cumming they call it, the scientific acumen of Marie Curie and the veracity of Mother Teresa. It doesn't matter. It still has to be subjected to cross-examination. Surrogate testimony cannot convey what Erwin knew or observed about the events her certification were about. The surrogate testimony cannot be to replace what Erwin did, and that's exactly what the state did here. Counsel said there was a peer review. There is no evidence, Your Honors, of any peer review here. There is no evidence that, in fact, what happened at trial was that the state handed over Erwin's reports, lab notes, to the expert and asked her to identify them, and that was the only information that that expert that they call had. She didn't even, she did not test anything on her own. She did not make any marks or checks. Counsel, if this court were to disagree with your jurisdiction argument but agree with your argument regarding a Crawford violation, where would that leave the state? It would leave the state where we are today, which is exclusion of that report, that expert testifying regarding the results. Well, can they retry the case, get a different expert, or would it be a double jeopardy? I believe at this time it would be double jeopardy, Your Honor. I do think so. Thank you. Any rebuttal? I'd like to pick up where I left off in regards to this question about the allowable parameters of an expert's witness testimony. It seems very clear from Williams and the subsequent cases, including the Illinois Supreme Court's subsequent treatment of these types of cases, that there is some realm where an expert may testify and give an expert opinion that in no way implicates a confrontation case. As a result, the state has cited to the Seventh District case, U.S. v. Turner, for some guidance there because the court really, at that point after Williams, was very focused on that particular analysis. And again, it's relatively straightforward. An expert is allowed, like they always have been, to look at raw data, to interpret that data, and then to present that as an opinion to the jury. That does not deprive a defendant of the ability to cross-examine the individual on that particular evidence. Where we get into an area where the confrontation clause could be implicated is if, to the extent that that expert starts vouching for the work performed by someone else that they're not familiar with, or where they simply repeat and say, well, their report said this, as opposed to coming to their own independent opinion about what the results said. It's worth noting, though, that an expert cannot be found to parrot an opinion simply because they share the same opinion. All that shows is that more than one person has reached the same conclusion, and that more likely than not, the jury would never know that information, because the opinion of an individual who doesn't testify, probably, although we're getting into an area that's not really before the court, but just simply stating what the opinion of a non-testifying expert was, is more troublesome with regard to the confrontation case. What we're focused on here is, could Kristin Stiefvater say, I have reviewed this data, and this data showed X, Y, and Z? It's very, very clear that she could. Could she also testify to her direct knowledge of the testing that was performed? Yes. Yes, she could, as long as she had direct knowledge of what was done. She could testify to that, because then the defendant still has the ability to cross-examine her on the extent of her knowledge, and whether or not it truly passes muster with regard to what was done. The second issue is one of availability, and this is an issue where it gets a little bit muddled, because we have two separate issues. With regard to the potential Crawford violation, and the confrontation clause, availability is not an issue before this court. Crawford is very clear that availability only comes into play when there is a potential Crawford violation, when the state does seek to enter into evidence, testimony of evidence, absent the ability to cross-examine. And in that particular instance, the only way the state can do so is first by proving the witness was unavailable, as it has been defined by the courts with respect to that issue, and number two, that the defendant had a prior opportunity to cross-examine. Again, that only happens once there is a conclusion that it was testimonial evidence at issue, and that there is a potential Crawford violation. The state in this case has taken the position that Kristen Stiefvater's testimony was not a per se violation of Crawford or the confrontation clause. As a result, the two other elements are not at issue here. The state simply is not required to prove that the witness was unavailable if the testimony offered does not otherwise violate Crawford. In fact, because it wasn't a confrontation clause violation, it didn't matter if Hope Irwin was truly unavailable. As that's been determined by the courts, or whether she just didn't want to show up, or whether the court preferred to call someone else, so long as the confrontation clause was not impeded. And counsel refers to Bullcoming, but that just drives home the point, because in Bullcoming, the state did try to enter into evidence, testimonial statements contained in a report that were made by a non-testifying witness. And at that point in time, the court said, you need to prove this witness was unavailable. The reason it's somewhat muddled in this case is because we have a separate issue of whether or not this was a motion to suppress. And the basis for the state's contention, or partial basis for the state's contention, that this was an order of suppression is the fact that the state had no other way to enter that into evidence. But as we previously discussed during initial argument, that is a different analysis, a very, very different analysis. And that two-step analysis simply considers whether or not the order prevented evidence from being heard by the jury, and whether or not the state is certified that it was a substantial impairment on its ability to bring a case. It is quite simply two different analyses that deal with the same factual question of whether or not this witness was available. And finally, just briefly, counsel mentioned he wasn't sure if the defendant had objected to continuance of trial. They had, it's in the record, Volume 1, C-28. I'm not sure that matters to the court's analysis, but I did want to bring it to your attention. Thank you, and the state would respectfully request that the trial court order be reversed. Thank you. Thanks to both of you. The case is submitted, and the court stands in recess.